IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Travis L. Wedmore, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE § 1915A SCREENING** |
| | ) | |
| vs. | ) | |
| | ) | |
| Brian Jorgenson, et al., | ) | |
| | ) | Case No. 1:14-cv-149 |
| Defendant. | ) | |

## I. PROCEDURAL HISTORY

The plaintiff, Travis L. Wedmore ("Wedmore"), is an inmate at the North Dakota State Penitentiary. He initiated this action with the filing of a *pro se* complaint on December 2, 2014, along with an application to proceed *in forma pauperis*, which the court granted.

Subsequent to the filing of the initial complaint, Wedmore filed an amended complaint wherein he simply asserted that he had been wronged and then proceeded to list a number of defendants. He also filed notice of his consent to the undersigned's handling of this matter as well as what the undersigned deemed to be two supplements to his amended complaint.

Upon screening Wedmore's amended complaint pursuant to 28 U.S.C. §1915A, undersigned identified the following deficiencies: (1) a failure by Wedmore to allege a basis for this court's exercise of jurisdiction, which is a mandatory requirement under Fed. R. Civ. P. 8(a)(1); and (2) a failure by Wedmore to articulate what wrongs each of the defendants had allegedly engaged. Consequently, the undersigned granted Wedmore leave to file a second amended complaint to address the aforementioned deficiencies. Wedmore filed a second amended complaint on August 24, 2015, which is now before the undersigned for an initial screening pursuant to 28 U.S.C.

1

§1915A.

## II.     STANDARDS GOVERNING INITIAL REVIEW

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burden imposed by prisoner suits that are too often frivolous and without merit. Jones v. Bock, 549 U.S. 199, 203-04 (2007); Woodford v. Ngo, 548 U.S. 81, 84 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee requires courts to conduct an early screening to weed out claims that clearly lack merit. 28 U.S.C. § 1915A. In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

In enacting the PLRA, Congress did not impose a heightened pleading requirement for prisoner complaints, and, in this case, 42 U.S.C. § 1983 does not impose any such requirement. Jones, 549 U.S. at 203-04. Consequently, to state a cognizable claim, the complaint need only meet the minimal requirements of Fed. R. Civ. P. 8(a)(2) that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007). In addition, when a prisoner is proceeding *pro se*, the court must construe the complaint liberally and hold it to a less stringent standard than would be required of an attorney. Id. at 94.

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, more is required than simply expressing a desire for relief and declaring an entitlement to it. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atlantic, 550 U.S. at 570). A complaint fails to meet this minimal

pleading standard if it contains nothing more than "labels and conclusions, " "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft, 556 U.S. at 678 (2009) (quoting Bell Atlantic, 550 U.S. at 555, 557).

To state a cognizable claim for violation of federal civil rights under 42 U.S.C. § 1983, the plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). The pleading must also allege a sufficient causal link between the alleged violation and the basis upon which the particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability. Ashcroft, 556 U.S. at 676-77; Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999).

## III. DISCUSSION

### A. "First Claim(s)"

Wedmore was civilly committed as a sexually dangerous individual. On July 17, 2003, he assaulted an employee at the State hospital. He was charged with the offense of simple assault, a Class C felony under State law. He was subsequently convicted and sentenced to a term of five years imprisonment.

Wedmore arrived at the NDSP on October 2, 2013, to begin serving his sentence. According to Wedmore, he was removed from his cell in the NDSP's "orientation unit" on October 15, 2013, and placed in administrative segregation for approximately three months due to the fact that he had

been civilly committed as a dangerous individual and on account of his assaultive behavior.[1]

Wedmore asserts that he did nothing upon arriving at the NDSP to warrant his placement in administrative segregation, that Weigel had a retaliatory motive for referring him for this placement, that Jorgenson expressed agreement with this placement, that Bertsch relied on erroneous information when approving this placement, and that Budeau, Fode, and Belisle "made excuses" to keep him in administrative segregation. He further avers that his placement in administrative segregation constituted cruel and unusual punishment.

    **1.    Retaliation**

Insofar as Wedmore appears to be asserting a claim for retaliation, it fails for lack of specifics. In order to present a retaliation claim, a prisoner must establish: (1) he engaged in a protected activity; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct, and (3) there is a causal connection between the protected activity and the adverse action. See Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Gill v. Pidlypchak, 389 F.3d 379, 380 (2nd Cir. 2004); Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). Although claims of retaliation are not held to a heightened pleading standard, something more than a conclusory allegation is required to satisfy the requirement under Iqbal that a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Williams v. Stewart, 476 Fed. App'x 105 (8th Cir. 2012) (*unpublished per curiam*) (concluding that a state prisoner's conclusory allegations of retaliatory discipline failed to state a § 1983 claim); Hartsfield v. Dept' of Corr., 107 Fed. App'x 695 (8th Cir. 2004) (*unpublished per*

---

[1] It is unclear from Wedmore's amended complaint whether the assaultive behavior to which he refers is the conduct underlying his State conviction or other conduct in which he may have engaged upon arriving at the NDSP.

*curiam*) (affirming the pre-service dismissal of a prisoner's retaliation claim because he had not offered anything beyond conclusory allegations of retaliation); Atkinson v. Bohn, 931 F.3d 1127, 1128 (8th Cir. 1996) (*unpublished per curiam*) ("Because [the prisoner's] allegations of retaliation were speculative and conclusory, this claim was properly dismissed."); Cameron v. Siddiq, No. 14-3020, 2007 WL 4210442, at* 4 (M.D. Ala. Nov. 28, 2007) ("[I]t is essential that federal courts carefully scrutinize retaliation claims brought by prisoners challenging actions of correctional personnel. [C]ourts must approach prisoner claims of retaliation with skepticism and particular care. This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." (internal citations and quotations omitted)).

Here, the deficiencies that plagued Wedmore's amended complaint continue to plague his second amended complaint. Wedmore has a tendency to make conclusory allegations and then list defendants. For example, he claims that Weigel retaliated against him but does not state what activity he had engaged to prompt this alleged retaliation. He claims that Budeau, Fode, and Belisle made excuses to keep him in administrative segregation but does not state what these alleged excuses were. As for Jorgenson, he provides even less, stating only that Jorgenson agreed to his placement in administrative segregation.

Since Wedmore has not described with the requisite detail what, if any, alleged protected activity he was engaged in at the time of any retaliation, much less articulated a causal connection between his activities and his placement in administrative segregation, his claim fails. In sum, his

5

conclusory assertions that he was retaliated against are insufficient to support a cognizable claim.

### 2. Cruel and Unusual Punishment

Wedmore's assertion that his placement in administrative segregation constituted cruel and unusual punishment also fails to serve as a basis for cognizable claim.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 4 (1992). The Amendment also imposes a duty upon prison officials to provide humane conditions of confinement, meaning they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–527 (1984); see also Helling, 509 U.S. at 31–32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976). To violate the Eighth Amendment, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347; Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Anderson v. Coughlin, 787 F.2d 33, 34–35 (2d Cir.1985). It is "only the unnecessary and wanton infliction of pain" that implicates the Eighth Amendment. Rhodes, 452 U.S. at 347. "To the extent that ... conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id.

Two things are worth noting here. First, the mere fact that Wedmore was placed in

6

administrative segregation does not necessarily give rise to an Eighth Amendment claim. See e.g., Monroe v. Perlman, No. , 2009 WL 152651, at * 9 (N.D.N.Y. Jan. 21, 2009) ("It is well established, however, that subjecting a prisoner to the ordinary incidents of SHU disciplinary confinement alone does not rise to a level which is intolerable to the Eighth Amendment's cruel and unusual punishment protections."); Murphy v. Wheaton, 381 F.Supp. 1252, 1260 (D.C. Ill. 1974) ("[I]solated or segregated confinement does not per se amount to cruel and unusual punishment."). Second, Wedmore has alleged no facts which, if proven, would tend to show that confinement in administrative segregation constituted cruel and unusual punishment. He does not describe any particularly harsh condition to which he as allegedly subjected to when in administrative segregation (deprivation of any food, clothing, recreation, or sanitation) or otherwise allege that he suffered any injury as a result of his placement in administrative segregation. Rather, he states simply that his confinement in administrative segregation was cruel, unusual, and unfair. Such general statements are insufficient to state a claim under the most liberal of pleading standards. See Twombly, 550 U.S. at 555; Iqbal, supra; see also Miskovitch v. Hostoffer, No., 2010 WL 2404424, at * 8 (W.D. Pa. May 19, 2010) (citing Hutto v. Finley, 437 U.S. 678, 686 (1978), for the proposition that "[n]either classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual").

### B. "Second Claim"

Wedmore's second claim arises out of Budeau's alleged failure to timely respond to a threat of suicide that he made while in administrative segregation. According to Wedmore's second amended complaint, he was placed in administrative segregation in the Spring of 2014 pending an

7

investigation of a sexual harassment claim filed against him by another inmate. On the evening of May 12, 2014, while in administrative segregation, Wedmore, pushed an emergency call button in his cell and told the responding officer that he was feeling suicidal and wanted to speak with his case manager, Dennis Budeau. After approximately thirty minutes had lapsed and no one came to his cell to speak with him, he acted on his ideations. He was subdued, taken to the emergency room at Sanford Health for treatment, and then returned to administrative segregation, where he was held for 5 days of observation.

Although Wedmore questions why the officer who had received his call did not immediately leap into action, it is Budeau who he asserts was deliberately indifferent to his serious mental health needs. Specifically, he asserts:

> Dennis Budeau failed to do his job in making sure I am safe. I called into the Control Booth and the Officer said he would give the message to Dennis Budeau. I told the Officer that I was feeling suicidal and need to talk to Dennis Budeau. I found out later that Dennis Budeau told the Officer that he was too busy and would talk to me _if_ he had time.
>
> Dennis Budeau is being sued in his "Individual Capacity."

(Docket No. 17) (emphasis in original).

Prisoners have the right "to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide." Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir.2005) (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir.1994)). To establish liability for a prisoner's suicide, or attempted suicide, under § 1983, a plaintiff must show that the jail official displayed "deliberate indifference" to the prisoner's taking of his own life or attempting to do so. See Cook, 402 F.3d at 1115. "[D]eliberate

8

indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self infliction of harm will occur.'" Id. The mere opportunity for a prisoner to commit suicide, without more, "is clearly insufficient to impose liability on those charged with the care of prisoners." Tittle v. Jefferson Cnty. Comm'n, 10 F.3d 1535, 1540 (11th Cir.1994) (en banc). To be deliberately indifferent to a strong likelihood that a prisoner will commit suicide, the official must be subjectively aware that the combination of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide. See Gish v. Thomas, 516 F.3d 952, 954–55 (11th Cir. 2008).

For the purposes of its initial review, the Court cannot conclude, based solely on the allegations in the complaint, that Wedmore has not stated a plausible deliberate indifference claim against Budeau. Consequently, Wedmore shall be permitted to proceed with this claim.

### C. "Third Claim"

Wedmore's third claim is against Bertsch, Erickson, and Michael Hundley and arises out of the conditions under which he was allegedly confined following his suicide attempt on May 12, 2014. Following his attempted suicide, Wedmore was taken to the emergency room for treatment. Later that evening, he was returned to the NDSP and placed in an observation cell with nothing but a safety gown and mattress for 5 days. At some point during his 5 day stint in observation, he apparently "blacked out and busted [his] head off the concrete ground causing [his] upper right brow to split open and bleed." (Docket No. 17).

Wedmore asserts that the 5 days that he spent in observation constituted cruel and unusual punishment to the extent that his cell was very cold and he was denied the use of a "safety blanket" to keep himself warm, he was unable to shower, and he was denied testing to determine why he had

9

"blacked out."

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir.1997). Rather, extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also generally allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Giving Wedmore the benefit of all doubt and construing his second amended complaint very liberally, the undersigned concludes that, for purposes of this initial screening, he has pled a viable cause of action with respect to the conditions of his confinement while under observation. See e.g., Wilson v. Seiter, 501 U.S. 294, 304 (recognizing that a combination of conditions, such as "a low cell temperature at night combined with a failure to issue blankets" may deprive the prisoner of an identifiable human need--warmth--in violation of the Eighth Amendment); Murphy v. Walker, 51 F.3d 714, 720–21 (7th Cir. 1995) (holding that the plaintiff prisoner stated an Eighth Amendment claim where he alleged that he spent a week and a half in a cell without adequate heat, clothing, or bedding); Henderson v. DeRobertis, 940 F.2d 1055, 1058 (7th Cir. 1991) (finding that the

10

deprivation of blankets for four days in extreme cold could constitute an Eighth Amendment violation); Murphy v. Walker, 51 F.3d 714, 721 (7th Cir. 1995) (confinement in cold cell without clothes and heat for a week and a half in middle of November states claim); McCray v. Burrell, 516 F.2d 357, 367, 369 (4th Cir. 1975) (holding that the plaintiff prisoner stated an Eighth Amendment claim where he alleged that he spent forty-six hours in a cell without clothing, mattress, blanket, water, or personal hygiene items); but see Uman v. Hoffer, No. 08–3123, 2011 WL 4496596, at * 2 (D. Kan. 2011 Sept. 27, 2011) ("The denial of a shower for five days is not sufficient to state a claim for relief under the Eighth Amendment.").

### D. "**Fourth Claim**"

Wedmore's fourth claim reads as follows:

> On May 20, 2014, I proved my innocents and the "Sexual Harassment" write-up was dismissed. On May 29, 2014, I received a Level 3 Report for hanging myself.
>
> KEY POINTS:
> 1. I never would have hung myself had staff done their jobs when I threatened to end my life.
>
> 2. I got wrote up on a Mental Health issue. (NOTE: In 2010, I was clinically diagnosed with Depression and was put on medication to treat my illness. I was diagnosed by Dr. Mark Rodland at the ND State Hospital).
>
> 3. Depression alters the ability to think clearly, causing an individual to act on how he's feeling....
>
> * * *
>
> DEFENDANTS
> 1. Dennis Budeau gave me the Level 3 Report. He could have prevented my suicidal attempt if he had taken the time to talk to me when I expressed my desire to die.
>
> Dennis Budeau is being sued in his "Individual Capacity."

11

> 2. Corky Stromme agreed to the Level 3 Report. He stated that this a "Very Serious Report."
>
> Corky Stromme is being sued in his "Individual Capacity."
>
> 3. Troy Schulz blames me for my actions. This is a Mental Illness. Refer to "KEY POINTS #3."
>
> Troy Schulz is being sued in his "Individual Capacity."

(Docket No. 17) (errors in original).

Absent more, the existence of a "Level 3 Report" does not constitute the basis for cognizable claim. As Wedmore makes no attempt to explain how he has been affected by this report or otherwise identify what right of his this report allegedly violates, this claim is subject to dismissal.

### E. "Fifth Claim"

Wedmore's fifth claim pertains to medical expenses that he incurred following his suicide attempt and the NDSP's decision to debit his prison account to offset them. According to Wedmore he agreed to: (1) pay his hospital bill when it arrived; and/or (2) pay 50% of his income and wages toward his hospital bill when it arrived per the "Inmate Handbook." On September 23, 2015, his entire prison account "was cleared out." He filed a grievance, seeking a refund of the money debited from his account but was denied. Notably, he is not challenging the validity of any agreement he entered into to reimburse the NDSP for his medical expenses or otherwise assert that the removal of funds from his account constituted a violation of his federal constitutional rights. Rather, he is simply asserting that money was removed from his account in violation of NDSP policy.

It is well settled that an alleged violation of prison policy does not constitute a violation of a federal right. Garner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy."); Manzanillo v. Jacquez, 555 Fed. App'x 651, 653 (9th Cir. 2014)

12

(opining that an alleged violation of prison policy does not establish a federal constitutional violation). Moreover, by his own admission, he agreed to reimburse the NDSP for his medical expenses. Consequently, this claim is subject to dismissal.

### F. "**Sixth Claim**"

Next, Wedmore asserts that he was singled out for discipline on account of his sexual orientation. Specifically, he asserts:

> On September 9, 2014, I was found guilty of sexual contact with 4 other inmates. As a consequence I was placed in AS. Besieds [sic] 1 other inmate, I was the only one placed in AS. I have no previous Reports regarding this matter. The other 3 inmates were not given Reports, nor were they put in AS. They still have their jobs and preferred housing. I wrote a grievance but was told that I could not grievance this matter.
>
> Key Points:
> 1. Out of the 5 of us, only 2 of us were put in AS. Us 2 that were put in AS are the only ones to admit that we are attracted to the same sex. I believe we are in AS because of our sexuality. This is discrimination because of our sexuality.
>
> 2. I am being targeted and treated unfairly.
>
> 3. The other 3 were never consequenced [sic] for their sexual behaviors involving myself.
>
> 4. I am being denied my grievance process.
>
> * * *
>
> DEFENDANTS
> 1. Colby Braun has the final say in who goes to AS. He has made excuses and chose not to prosecute the other inmates that were involved.
>
> Colby Braun is bieng [sic] sued in ""Both Capacities."
>
> 2. Corey Wald has agreed with the AS placement and denied use of the "Grievance Procedure."
>
> Corey Wald is being sued in his "Individual Capacity."

13

(Docket No. 17).

To state an equal protection claim, a plaintiff must allege that he was intentionally treated differently from other similarly-situated individuals, either because of his membership in a protected class, or without any rational basis. Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). For purposes the initial screening, the undersigned concludes that defendant has asserted a cognizable equal protection claim. See Johnson v. Johnson, 385 F.3d 503, 530 (5th Cir. 2004) ("Neither the Supreme Court nor this court has recognized sexual orientation as a suspect classification [or protected group]; nevertheless, a state violates the Equal Protection Clause if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims"); see also Jackson v. Raemisch, No.10-cv-212, 2010 WL 3062971, at * 1 (W.D. Wisc. July 30, 2010) (allowing an inmate alleging that he was discriminated against on the basis of his race and sexual orientation to proceed with an equal protection claim).

### G. "Seventh Claim"

Wedmore next assert that defendants violated his rights under the Prison Rape Elimination Act ("PREA") to the extent that they failed to "press charges" against inmates who he claims sexually harassed him on September 25, 2014. Specifically, he asserts:

> On September 25, 2014, two other inmates were sexually harassing me. I reported it to staff, but nothing was done. Even when the staff heard what the inmates were saying to me, the staff did nothing. At least not until I would ask the staff "Do You Hear This?" I was even told the staff that I would like to press charges, but was denied.
>
> Key Points:
> 1. The officers are suppose[d] to take all reports of sexual harassment and abuse very seriously, according to the PREA (Prison Rape Elimination Act).
>
> 2. I was given a Report when I was accused of sexual harassment. But when staff hear it and know for sure that it's happening, nothing is done about it.

3. Is this more "Cruel & Unusual Punishment" by making me suffer from other inmates Sexually Harassing me? Or is it treating me unfairly?

* * *

DEFENDANTS

1. Dennis Budeau refused me to press "Sexual Harassment" charges against the 2 individuals that were harassing me. Although Dennis Budeau is trying to help, he still refused to let me press sexual harassment charges. Which is a violation of my PREA rights.

Dennis Budeau is being sued in his "Individual Capacity."

(Docket No. 17).

The PREA does not create a private right of action. See McCloud v. Prack, 55 F.Supp.3d 478, 483 n. 2 (W.D.N.Y. 2014) (observing that every court to address the application of PREA had concluded that it does not support a private right of action by an inmate); Simmons v. Solanzo, No. 3:14CV–P354, 2014 WL 4627278, at * 4 (W.D. Ky. Sept. 16, 2014) ("Upon consideration, this Court concludes that the PREA creates no private right of action. Plaintiff's claim under that Act must, therefore, be dismissed."); Law v. Whitson, No. 2:08-cv-0291, 2009 WL 5029564, at *4 (E.D. Cal. Dec. 15, 2009) ("[T]he Prison Rape Elimination Act was enacted to study the problem of prison rape. Nothing in the Act suggests that it created a private right of action, enforceable under section 1983. The Act in itself contains no private right of action, nor does it create a right enforceable under Section 1983." (internal citations omitted)). Consequently, Wedmore fails to state a § 1983 claim based on an alleged violation of the PREA.

**H.    "Eighth Claim"**

Wedmore claims that the Defendants Pat Schatz and/or Nicholas Yarbough lost or otherwise failed to account his AM/FM radio when packing up his personal property following his placement

15

in administrative in September 2014.[2]

Allegations that a prison official deprived an inmate of his property does not constitute cognizable claim for an unauthorized intentional deprivation of property "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984);

Here, there is nothing in the pleadings to suggest, and Wedmore does not allege, that defendants acted intentionally or that North Dakota does not provide an adequate remedy to recover the value of his lost property. See Rodriguez v. Quarterman, No. H-07-4258 , 2007 WL 4437162, at * 1 (S.D. Tex. Dec. 18, 2007) (opining that claims concerning lost property are not actionable where the State provides a remedy); Harrison v. Lee, No. 7:08cv00062, 2008 WL 46731, at *4 (W.D. Va. Feb. 19, 2008) ("Inasmuch as plaintiff possessed tort remedies under Virginia state law to recover the value of his lost . . .it is clear that he cannot prevail in a constitutional claim concerning the alleged property loss."); see also Marrufo v. Sugrue, No., 2010 WL 4392936, at *2 (E.D. Cal. Oct. 29, 2010) (citing Daniels v. Williams, 474 U.S. 327, 328-32 (1986), for the proposition that, "[i]f . . . a prison official merely acts negligently in losing a prisoner's property there is no due process violation."). Consequently, the undersigned concludes that Wedmore has failed to articulate a cognizable claim with respect to this lost radio.

I.      **"Ninth Claim"**

Wedmore avers that since arriving at the NDSP, he has been and continues to experience "black outs." Additionally, he accuses the medical staff of malpractice, averring that staff checked

---

[2] Wedmore also mentions, as an apparent afterthought, that he "[has] also been missing mail, or legal mail has been opened ans resealed with tape." (Docket No. 17). However, he does not expand any more on this issue, focusing instead on his radio. Consequently, the undersigned construes Wedmore's "eighth claim" as one solely pertaining the deprivation of his radio. In any event, his stray, conclusory comments, absent more, do not amount to a cognizable claim.

16

his vitals but failed to conduct testing to determine the cause of his "black outs" and has otherwise treated him with disrespect.

The Eighth Amendment's guarantee against cruel and unusual punishment is violated when prison officials exhibit deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Popoalii v. Correctional Med. Services, 512 F.3d 488, 499 (8th Cir. 2008). To prevail on a claim of constitutionally inadequate medical care, an inmate must prove: (1) that he suffered from an objectively serious medical need; and (2) that prison officials actually knew of the need and deliberately disregarded it. Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). To be objectively serious, a medical need "must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Id. (quoting Scott v. Benson, 742 F.3d 335, 339-40 (8th Cir. 2014)). Deliberate indifference requires a showing of a mental state akin to criminal recklessness– "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see Jackson, 756 F.3d at 1065. Deliberate indifference is "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Popoalii, 512 F.3d at 499 (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

Here, Wedmore does not assert that he was denied treatment *per se*. Rather, he asserts that medical staff have committed medical malpractice insofar as they have not done enough to date. Absent more, such assertions are not actionable under the guise of § 1983 claim. See Jackson, 756 F.3d 1060, 1065-66 (8th Cir. 2014) ("Merely demonstrating that a prison doctor committed medical

malpractice is insufficient to establish deliberate indifference").

## IV. **CONCLUSION**

The court shall permit Wedmore to proceed with his second, third, and sixth claims. The remainder of his claims are **DISMISSED**. The Clerk's office shall effectuate service of the summons, second amended complaint, and a copy of this order upon defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure and, if necessary, that the service be made by the United States Marshals Service.

Dated this 1st day of October, 2015.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court